**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **PAULA AJISEFINNI,** | * | |
|     Plaintiff | * | |
| v. | * | Civ. No. DLB-19-3284 |
| **CLIFTONLARSONALLEN, LLP,** | * | |
|     Defendant. | * | |

**MEMORANDUM OPINION**

Paula Ajisefinni alleges her former employer CliftonLarsonAllen, LLP ("CLA") fired her from her position as Senior Auditor because of her race and age. ECF 1 & 2. She asserts violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and Maryland anti-discrimination laws, as well as a breach of contract claim.[1] Before Ajisefinni retained counsel, CLA moved to dismiss and sought other sanctions for discovery delays. ECF 28. The Court denied the motion. ECF 40. Ajisefinni retained counsel and discovery proceeded, though she never pursued written responses to her discovery requests after CLA refused to produce responsive documents without a stipulated confidentiality order. *See* ECF 51. After the close of discovery, CLA filed the pending motion for summary judgment. ECF 52. The Clerk of Court sent a Rule 12/56 notice to Ajisefinni on June 1, 2022, advising her that the summary judgment motion, if granted, could result in dismissal of the case; that she had the

---

[1] Ajisefinni filed her complaint, ECF 1, without the assistance of counsel. She attached her EEOC charge, with a separate "Statement of Claim," ECF 2, to her complaint. Together, these filings (ECF 1 and 2) are the operative complaint. *See* Fed. R. Civ. P. 10(c). She retained counsel in May 2021. *See* ECF 31, 32, 33. This Court granted plaintiff's counsel's motion to withdraw on December 17, 2021. ECF 49. In accordance with Local Rule 101.2, the Clerk of Court sent Ajisefinni a letter on December 20 advising her that the case would proceed regardless of whether she obtained new counsel. ECF 50. She has proceeded *pro se* since her former counsel's withdrawal.

1

right to file a response within twenty-eight days; and that if she did not respond, the Court would resolve the case based on the defendant's materials. ECF 53. Ajisefinni did not file an opposition. A hearing is not necessary. Loc. R. 105.6. For the following reasons, the Court grants CLA's motion for summary judgment.

I. **Background**

In support of its motion for summary judgment, CLA submits four sworn affidavits; a Performance Improvement Plan; a list of individuals hired into CLA's Federal Practice sector (where Ajisefinni worked) from 2012 to 2018; and emails between Ajisefinni and a supervisor. *See* ECF 52-2 – 52-11. Ajisefinni did not respond or submit any evidence in opposition to the motion. Failure to respond to a motion for summary judgment "leave[s] uncontroverted those facts established by the motion" for the purposes of deciding the motion. *See Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 2013); *Wallace v. Koppel*, No. JFM-09-2666, 2010 WL 1956821, at *2 (D. Md. May 14, 2010) (accepting evidence presented by defendants as undisputed where plaintiff failed to oppose summary judgment motion). In deciding whether CLA is entitled to judgment as a matter of law, the Court will accept the following facts found in the exhibits to CLA's motion as undisputed and construe them in the light most favorable to Ajisefinni.

CLA hired Ajisefinni as a Senior Auditor within its Federal Practice sector on September 21, 2015. Ajisefinni is Black. At the time she was hired, she was approximately 55 years old. Prior to being hired, Denise Wu, then a Principal at CLA, interviewed Ajisefinni in person. CLA charged Wu with making the decision as to whether CLA should hire Ajisefinni. Following the interview, Wu, who was aware of Ajisefinni's race and approximate age, decided and recommended that CLA should hire her.

CLA's Federal Practice performs audits of various clients, including federal agencies such as the United States Government Accountability Office ("GAO") and the United States Department of Veteran Affairs ("VA"). CLA staffs its audit assignments with a Principal, who primarily supervises an Audit Manager, who primarily supervises a Senior Auditor, who primarily supervises lower-level auditors. The lower-level auditors report directly to the Senior Auditor, who reports to the Audit Manager, and so on. Ajisefinni was initially assigned as Senior Auditor to an audit of GAO. Wu was the Principal on that audit, Justice Sakyi (who is also Black) was the Audit Manager overseeing Ajisefinni, and several lower-level CLA auditors were also assigned.

During the GAO audit, Ajisefinni "did not provide guidance to staff or communicate up to management . . . . This became a risk in the tight deadline environment the audit was under." ECF 52-2, at 2. Ajisefinni arrived late to the client office multiple times. During meetings with her supervisor, she "would turn a blind eye" and claim she was not responsible for assigned tasks or outstanding items, despite her supervisor having discussed her responsibilities with her on multiple occasions. *Id.*

Based on Ajisefinni's performance on the GAO audit, Wu reassigned her to an audit of VA in early 2016. Wu was again the Principal on that audit, Janice Codrington (who is also Black) was the Audit Manager overseeing Ajisefinni, and several lower-level CLA auditors were assigned. During the VA audit, Ajisefinni communicated with her supervisor only when she chose to, "without regard for the needs of her team." *Id.* at 3. On several occasions, she did not inform Codrington of her location. For her first assignment, she spent over four weeks updating basic documents. Her work product generally "need[ed] a lot of correction and update[s]" by Codrington to meet client needs, and she failed to prioritize client assignments to ensure timely completion of work. *Id.* at 4. Despite Codrington specifically instructing Ajisefinni to ask

clarifying questions, she "refuse[d] to cooperate with that request" or check in more often. *Id.* at 3. Finally, she did not prepare for or offer to help with a client meeting.

On April 16, CLA placed Ajisefinni on a Performance Improvement Plan ("PIP"). The decision to place her on a PIP was made collectively by Wu, Sakyi, and Codrington, as well as Cynthia Blake, a Senior People Solutions Generalist. On April 20, Sakyi and Codrington met with Ajisefinni to discuss performance issues documented in the PIP. Wu attended the meeting. The PIP notes that prior to the meeting, both of Ajisefinni's supervisors on the GAO and VA audits (Sakyi and Codrington) had discussed the performance feedback with her.

During the weeks following the PIP meeting, Ajisefinni's job performance did not improve. On May 9, 2016, with the approval of Doreen Shute (CLA's Federal Practice leader), CLA terminated Ajisefinni's employment.

Ajisefinni filed a charge with the Equal Employment Opportunity Commission ("EEOC") on May 8, 2017 alleging discrimination based on race and age, which she signed under penalty of perjury. ECF 1-1, at 1. In it, she alleges that during "the course of [her] employment Denise Wu would make derogatory comments regarding [her] age, which took the form of being told, 'you are too old, you don't fit the group of younger staff.'" *Id.* The EEOC issued a Notice of Right to Sue on August 16, 2019. *Id.* at 2. On November 14, 2019, Ajisefinni, proceeding *pro se*, filed a complaint alleging race-based employment discrimination under Title VII, age-based employment

discrimination under the ADEA, analogous state law claims, and breach of contract.[2]  ECF 2, at 2. She claims that she was terminated because of her race and age.  *Id.* at 1.  She seeks, *inter alia*, reinstatement with back pay and a promotion; $4 million in compensatory and punitive damages; liquidated damages; and costs and fees.  ECF 1, at 7.

## II.     Standard of Review

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position.  Fed. R. Civ. P. 56(c)(1)(A).  Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial."  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment.  *Id.* at 251.  The Court "should not weigh the evidence."  *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "the record taken as a whole could not lead a

---

[2] Regarding the state law claims, Ajisefinni specifically alleges "Violation of the State of Maryland Civil Rights Laws Article 49B Section I and Maryland State Government Title 20 Subtitle 6— Discrimination in Employment."  ECF 2, at 2.  The first provision refers to a now-repealed Maryland statute prohibiting employment discrimination.  *See Rosero v. Johnson, Mirmiran & Thompson, Inc.*, No. GLR-21-588, 2022 WL 899442, at *2 n.3 (D. Md. Mar. 28, 2022).  The second provision Ajisefinni cites, the Maryland Fair Employment Practices Act, is the current Maryland law prohibiting employment discrimination.  *Id.*; Md. Code Ann., State Gov't § 20-601 *et seq*.

rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III. Discussion

#### A. Title VII Race Discrimination

Ajisefinni asserts a Title VII discrimination claim alleging that she was terminated because of her race. "Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, prohibits employment discrimination." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The Act reaches "status-based discrimination" by providing "basic workplace protection such as prohibitions against employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (citing 42 U.S.C. § 2000e-2(a)).

Ajisefinni, as the plaintiff, bears the burden of proving the defendant discriminated against her "because of a protected characteristic." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998). A plaintiff can meet this burden through two avenues of proof: (1) by presenting direct or circumstantial evidence that an impermissible factor (here, race) solely or partially motivated the employer's adverse employment decision; or (2) by proceeding under the *McDonnell Douglas* burden-shifting framework. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 206 n.4 (4th Cir. 2019); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Ajisefinni's only direct or circumstantial evidence supporting her discrimination claim based on race is that she is Black. This fact alone is not sufficient to create a genuine issue of material fact as to whether race solely or partially motivated her termination. Thus, the Court proceeds to analyze her claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas*, 411 U.S. at 802; *see Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (analyzing Title VII claim under *McDonnell Douglas* framework where plaintiff did not proceed by direct evidence).

To establish a *prima facie* case of employment discrimination under *McDonnell Douglas*, a plaintiff must prove: "(1) membership in a protected class; (2) satisfactory job performance; (3) [an] adverse employment action; and (4) that the adverse employment action taken was taken under circumstances giving rise to an inference of unlawful discrimination." *Payne v. Brennan*, No. PX-16-1095, 2017 WL 952677, at *3 (D. Md. Mar. 10, 2017) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)) (internal citations omitted). The fourth element may be satisfied with direct or circumstantial evidence of discrimination. *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019).

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to produce evidence showing a legitimate and non-discriminatory reason for the adverse employment action. *Id.* The burden then returns to the plaintiff to prove by a preponderance of the evidence that the stated reason is pretext for discrimination. *Id.* "[The plaintiff] may succeed in this either by directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). To survive summary judgment, the plaintiff "must cast sufficient doubt upon the genuineness of the

7

explanation to warrant a jury's consideration of possible alternative and discriminatory motivations for the firing." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 218 (4th Cir. 2016).

Ajisefinni has established the first and third elements of a *prima facie* discrimination claim by virtue of her race and the fact that CLA fired her. However, she fails to offer evidence from which a reasonable jury could find she has met the second element (satisfactory job performance) or the fourth element (circumstances indicating unlawful discrimination).

Ajisefinni has not set forth specific facts indicating that she performed her job satisfactorily. Though she alleges in the complaint that she "performed [her] duties diligently and followed all the standards and guidelines appropriately," ECF 2 at 1, allegations unsupported by evidence do not raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c) (a party asserting a genuine issue of material fact must support the assertion by citing to particular parts of materials in the record); 56(e)(2) (if a party fails to properly support an assertion of fact or address another party's assertion of fact, the Court may consider the fact undisputed for summary judgment purposes).

On the other hand, CLA has offered uncontroverted evidence indicating that Ajisefinni's job performance as Senior Auditor was unsatisfactory. During her first audit assignment, she arrived late, claimed she was not responsible for assigned tasks, and failed to properly communicate with either the lower-level auditors she oversaw or her own supervisors. Due to her performance, Wu reassigned her to a different audit. Problems persisted. On this second audit, Ajisefinni's work product was often late and needed frequent correction. She refused to communicate with her new supervisor as frequently as was necessary and did not fulfill her duties to prepare for a client meeting. Throughout both audits, Ajisefinni's supervisors provided her with

8

feedback that went unheeded. They eventually placed her on a Performance Improvement Plan. They discussed this plan with Ajisefinni, Wu, and a human resources representative on April 16, 2016. Ajisefinni's performance did not improve in the weeks following. Even drawing all inferences in favor of Ajisefinni, she has not set forth any facts to contradict CLA's evidence. There is no genuine dispute regarding her unsatisfactory job performance.

Ajisefinni also has not set forth any facts indicating that her termination occurred under circumstances that would give rise to an inference of unlawful discrimination. She has not produced any evidence that CLA treated non-Black employees—similarly situated or otherwise—any differently than it treated her. *See Coleman*, 626 F.3d at 190. CLA, for its part, has produced evidence that both of Ajisefinni's supervisors were Black which, although "not conclusively determinative that [the employer] did not discriminate . . . certainly tends to support . . . that it was [the plaintiff's] unsatisfactory level of work, and not [her] race, that engendered negative response from [her] supervisors." *See Washington v. Digital Equipment Corp.*, 968 F.2d 1213, 1992 WL 1617946, at *5 (4th Cir. July 21, 1992) (Table). These circumstances do not give rise to an inference of unlawful discrimination.

Ajisefinni thus fails to establish a *prima facie* case of race-based employment discrimination. Even if she had, CLA has offered a legitimate and non-discriminatory reason for firing her: poor job performance. Under *McDonnell Douglas*'s burden-shifting framework, Ajisefinni would need to prove that this reason is mere pretext. As explained, she has not offered any evidence to indicate that her job performance was, in fact, satisfactory, or that her employers were more likely motivated by discriminatory intent. To the contrary, the record indicates that the same CLA employee who decided to hire Ajisefinni, Wu, was involved in the decision to fire her less than a year later. In circumstances "where the hirer and the firer are the same individual and

the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991). Ajisefinni has offered no evidence that the reason she was fired—poor performance—was pretext for discrimination. CLA is entitled to summary judgment on the Title VII claim.

### B. Age Discrimination in Employment Act

Ajisefinni also asserts an ADEA claim alleging that she was terminated because of her age. The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Ajisefinni, as the plaintiff, bears the burden of proving that her age was a "determining factor" in CLA's decision to fire her. *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (a plaintiff asserting an ADEA claim "must prove that age was the 'but-for' cause of the employer's adverse decision" (citation omitted)). Similar to the Title VII context, a plaintiff can establish age discrimination under the ADEA through either direct or circumstantial evidence that age motivated the adverse employment action, or by engaging in the *McDonnell Douglas* burden-shifting analysis. *Davenport v. Anne Arundel Cnty. Bd. of Educ.*, 998 F. Supp. 2d 428, 433 (D. Md. 2014); *Mereish*, 359 F.3d at 334.

Ajisefinni swore in her EEOC charge attached to the complaint that Wu told her that she was "too old" and "do[es] not fit the group of younger staff." ECF 1-1, at 1. Wu states in her affidavit that she "never made any such comments to or about Ms. Ajisefinni." ECF 52-3, at 6. When, as here, a plaintiff alleges age discrimination through direct or circumstantial evidence, she must produce, to avoid summary judgment, "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact."

10

*Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (quotation omitted). Such evidence must both "reflect directly the alleged discriminatory attitude and . . . bear directly on the contested employment decision." *Id.* at 391–92.

Ajisefinni has not produced sufficient evidence. Even though Wu's alleged statements reflect ageism, they do not bear directly on the decision to fire Ajisefinni. "Courts have consistently held that remarks about age that are not directly connected with the decision-making process do not reflect discriminatory intent sufficient to sustain an ADEA claim." *Gott v. Town of Chesapeake Beach, Md.*, 44 F. Supp. 3d 610, 615 (D. Md. 2014) (finding alleged statements did sustain ADEA claim because they were the defendant's explanation for the employment decision and were said contemporaneous with that decision); *see Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) (affirming judgment as a matter of law for employer and finding manager's statement two years prior to firing that "there comes a time when we have to make way for younger people" was not evidence of age discrimination); *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *18 (D. Md. June 10, 2011) (granting summary judgment on ADEA claim where alleged comments that plaintiff was "too old to change" and it was a "mistake" to let him into program were "not directly connected" to firing decision). Ajisefinni states only that the statements were made "[d]uring the course of [her] employment." ECF 1-1, at 1. Ajisefinni does not specify when the statements were made, in what context, or any other indirect evidence that might indicate they relate to CLA's decision to fire her. Moreover, even if the statements did somehow directly bear on her firing, Ajisefinni has not offered evidence suggesting that her unsatisfactory job performance was not the real reason for her termination. *See Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x 168, 175 (4th Cir. 2020) (affirming summary judgment where, even assuming employer's comments were direct evidence of age discrimination, defendant

presented evidence of a legitimate motivation for termination and plaintiff did not offer sufficient evidence to suggest it was not the reason). On this record, Ajisefinni fails to meet her burden of proving via direct or circumstantial evidence that age was a but-for, "determining factor" in CLA's decision to fire her.

Turning, then, to the second method of proving an ADEA claim, Ajisefinni likewise fails to meet her burden under the *McDonnell Douglas* framework. To establish a *prima facie* claim of discriminatory discharge under the ADEA, a plaintiff must prove that "(1) she was a member of the protected class, i.e. at least 40 years old; (2) she suffered an adverse employment action; (3) she was at the time meeting the employer's legitimate expectations; and (4) she was replaced by someone who is either outside the protected class or substantially younger than the plaintiff." *Kess v. Mun. Emps. Credit Union of Balt., Inc.*, 319 F.Supp.2d 637, 648 (D. Md. 2004) (granting motion for summary judgment where plaintiff failed to carry burden to show she was discharged because of her age). Ajisefinni has established that she was over 40 years old when she was fired. However, she fails to raise a genuine issue regarding whether she was meeting CLA's legitimate expectations for a Senior Auditor at the time she was fired. The unrefuted record evidence indicates that Ajisefinni did not properly communicate with supervisors, oversee lower-level auditors, meet client needs and deadlines, or respond to feedback. Her performance did not improve after being placed on a Performance Improvement Plan. Ajisefinni does not identify evidence to the contrary. Similarly, she has not offered evidence (or even allegations) indicating that CLA replaced her with someone substantially younger than herself.

Even assuming that Ajisefinni could state a *prima facie* ADEA claim such that the burden would shift under *McDonnell Douglas*, CLA offers ample evidence of her unsatisfactory job performance, which is a legitimate, non-discriminatory reason for firing her. Ajisefinni has not

met her burden to show by a preponderance of the evidence that this reason is pretextual. As in the Title VII context, the fact that Ajisefinni was hired by the same CLA supervisor (Wu) who later contributed to the decision to fire her "a relatively short time" later creates an inference against a finding of discrimination. *Kess*, 319 F. Supp. 2d at 649 (quoting *Proud*, 945 F.2d at 797–98). Also relevant (though not dispositive) is the fact that CLA hired others into management positions within its Federal Practice, both before and after Ajisefinni was fired, who were also over 40 years old. *See* ECF 2-4 at 1–2; ECF 52-7 at 10–13; *Kess*, 319 F. Supp. 2d at 649 n.21 (noting that the fact that employer hired at least one other manager over 40 was relevant to inference against ADEA discrimination).

CLA's motion for summary judgment on Ajisefinni's ADEA claim is granted.

### C. Maryland Fair Employment Practices Act

The Maryland Fair Employment Practices Act ("MFEPA") "prohibit[s] discrimination in employment by any person." Md. Code Ann., State Gov't § 20-602. Race and age discrimination claims under the MFEPA "are assessed under the Title VII framework." *Foster v. Summer Vill. Cmty. Ass'n*, No. PX-19-1199, 2021 WL 615136, at *4 (D. Md. Feb. 17, 2021) (citing *Guessous*, 828 F.3d at 216); *see Evans v. Md. Nat'l Capital Parks & Plan. Comm'n*, No. TDC-19-2651, 2020 WL 6703718, at *8 (D. Md. Nov. 13, 2020) ("Title VII standards also apply to employment discrimination claims under the MFEPA."); *see also Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *10 (D. Md. Mar. 31, 2022) (applying same *McDonnell Douglas* framework to plaintiff's ADEA- and MFEPA-based age discrimination claims).

For the reasons discussed in analyzing Ajisefinni's claims under Title VII and the ADEA, CLA likewise is entitled to summary judgment on Ajisefinni's race and age discrimination claims under the MFEPA.

### D.  Breach of Contract

In her breach of contract claim, Ajisefinni alleges CLA "violated its own policies and procedures on Equal Employment Opportunity and other unlawful and offensive work environment." ECF 2, at 2.  She alleges that CLA provided written policies and procedures to all employees, including her, that state that CLA is an equal opportunity employer that does not discriminate on the basis of race, age, national origin, etc.  *Id.*  She finally alleges that CLA failed to follow its own policies and procedures and that this breach of contract "has caused injuries, damages and harm to the Plaintiff."  *Id.*

To establish a breach of contract claim under Maryland law, a plaintiff must prove that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."  *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001).  Maryland courts generally refuse to find that employer policy statements give rise to a contractual obligation where the publication "[makes] only general statements of policy that could not be applied to specific employees."  *Bender v. Suburban Hosp., Inc.*, 758 A.2d 1090, 1113 (Md. Ct. Spec. App. 2000).  In *Bender*, for instance, the Court of Special Appeals held that anti-discrimination language in a hospital's bylaws—which stated that employment status and privileges would be decided without regard to sex, race, creed, color, disability, or national origin—was not contractual because it did not constitute a promise with potentially enforceable specificity.  *Id.*  Instead, it bound the employer "only in the moral sense."  *Id.*

Though Ajisefinni's breach of contract claim regarding CLA's anti-discrimination policies may have been sufficient to survive a motion to dismiss, it does not survive summary judgment.  *See Webb v. Potomac Electric Power Company*, No. TDC-18-3303, 2020 WL 1083402, at \*6–\*7 (D. Md. Mar. 6, 2020) (denying motion to dismiss implied breach of contract claim based on

employer's anti-discrimination policies where plaintiff required discovery in order to obtain exact language of the policy documents). Ajisefinni has alleged only the existence of a general anti-discrimination policy. She has not submitted any evidence that the alleged policy language gave rise to a contractional obligation of CLA. Summary judgment is thus warranted on the breach of contract claim.

## IV. Conclusion

For the foregoing reasons, the defendant CliftonLarsonAllen, LLP is entitled to summary judgment. A separate order follows.

11/18/2022
Date

Deborah L. Boardman
United States District Judge